UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEWAYNE WHITE,                          )
                                        )
            Petitioner,                 )
                                        )
      vs.                               )          No. 4:14-CV-1357 (CEJ)
                                        )
IAN WALLACE,                            )
                                        )
            Respondent.                 )


**MEMORANDUM AND ORDER**

This matter is before the Court on the petition of DeWayne White for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

I.    **Procedural Background**

Petitioner DeWayne White is presently incarcerated at the Southeast Correctional Center pursuant to the sentence and judgment of the Circuit Court of St. Louis County. On December 1, 2010, a jury found petitioner guilty of two counts of statutory sodomy in the first degree, in violation of Mo. Rev. Stat. § 566.062; child molestation in the first degree, in violation of Mo. Rev. Stat. § 566.067; endangering the welfare of a child in the first degree, in violation of Mo. Rev. Stat. § 568.045; and two counts of furnishing pornography to a minor, in violation of Mo. Rev. Stat. § 573.040. Resp.'s Ex. D at 50–55. The trial court sentenced petitioner as a prior offender to concurrent terms of life on the statutory sodomy charges, fifteen years on the child molestation charge, seven years on the endangerment charge, and one year on each charge of furnishing pornography to a minor. Resp.'s Ex. D at 63–67. Petitioner appealed his conviction, and on January

17, 2012 the Missouri Court of Appeals affirmed.  <u>State v. White</u>, 356 S.W.3d 880 (Mo. Ct. App. 2012); Resp.'s Ex. E.

Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which the post-conviction court denied without holding an evidentiary hearing.  Resp.'s Ex. H.  On November 19, 2013, the Missouri Court of Appeals affirmed the denial of post-conviction relief.  <u>White v. State</u>, 414 S.W.3d 49 (Mo. Ct. App. 2013); Resp.'s Ex. L.  On August 4, 2014, petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254.

## II.   **Factual Background**

The factual findings of the state court are as follows:

On June 26, 2009, O.C. was visiting her friend K.W.'s house for a sleepover. Resp.'s Ex. A, Tr. 140–41.  O.C. and K.W. were both 12 years old at the time.  Tr. 139–40, 173.  K.W.'s mother was in the hospital, and petitioner, K.W.'s 32-year old stepfather, was responsible for the care of O.C., K.W., and K.W.'s 6-year old brother.  Tr. 140, 174.  Petitioner picked up his 22-year old nephew Lee Magee that afternoon and they barbequed and drank beer outside.  Tr. 124, 241.  Petitioner told Magee that O.C. liked him.  Tr. 125.

Later on that evening, petitioner, Magee, K.W. and O.C. were sitting on a couch in the living room watching a movie when petitioner instructed O.C. to sit closer to Magee until she was sitting on his lap.  Tr. 143–44.  Petitioner then told Magee to take her to a bedroom and "fuck her up."  Tr. 144.  After O.C. told Magee she was uncomfortable, they returned to the living room.  Magee asked O.C. to hold his beer and petitioner told her to drink some of it.  Tr. 146.  Magee asked

petitioner permission to take O.C. back into the bedroom. Petitioner told Magee he could "use his hands and tongue, but not his dick." Tr. 128, 147, 212.

In the bedroom, Magee laid O.C. on the bed, pulled down her pants, kissed her on the mouth, touched her breasts, inserted his fingers into her vagina, and used his mouth on her genitals. Tr. 148. K.W. knocked on the door twice while Magee was with O.C. in the bedroom, interrupting them. Tr. 129, 177. Magee left the room to tell petitioner that O.C. "wanted it all" and that "her pussy was wide." Tr. 212. Petitioner told Magee that this wasn't the way it was supposed to happen and Magee needed to leave. Petitioner drove Magee home in the middle of the night. Tr. 151. Petitioner apologized to O.C. in the car ride back to K.W.'s house, stating that "this wasn't the way it was supposed to go" and he would train her how to have sex the next time she came over to K.W.'s house. Tr. 169, 212. Petitioner made O.C. swear she wouldn't tell anyone about what happened that night and threatened her. Tr. 153–54.

Back at the house, petitioner turned the television to a channel with pornography while K.W. and O.C. were with him in the living room. Tr. 151. Petitioner touched O.C.'s breasts and told her he was horny, but then fell asleep. Tr. 152–53. The next day O.C. texted her older cousin about what had happened and her cousin encouraged her to tell her mother. O.C. stated that she was trying to find a way to go to the doctor by herself.

Megan Marietta, a forensic interviewer with the Children's Advocacy Center (CAC), also testified at trial. Tr. 197–98. On June 30, 2009, Marietta interviewed O.C. Tr. 203. The interview was recorded and a portion of it was played at trial. Tr. 212–17. O.C. told Marietta that while she was at her friend K.W.'s house the

week before, petitioner had touched her breast and Magee had performed sex acts on her facilitated by petitioner. Tr. 207–08. Petitioner warned O.C. not to tell anyone about what happened, stating that he was involved with the Blood gang, had stabbed people, had spent ten years in the penitentiary and had been shot at in the past. Tr. 208.

Petitioner testified on his own behalf that he did not instruct Magee to have sexual contact with anyone and did not see Magee do something he considered to be wrong. Tr. 236. Petitioner stated that he took Magee home late in the evening on June 26th, because his stepdaughter K.W. asked him to do so. Tr. 236–37. He did not know why she had asked him to. Petitioner also testified that he had turned the television to pornography while he was flipping through channels, but he immediately turned it off. Tr. 239. He stated that he never touched O.C.'s breast or told her that he was horny.

Additional facts will be included as necessary to address petitioner's claims.

### III.  **Legal Standard**

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005).  "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)).  "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief."  Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 406.  "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect."  Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

**IV.  Discussion**

Petitioner presents four grounds for relief:  (1) the trial court violated his "right to be tried only for the crime charged" when K.W. testified that petitioner was

training O.C. "like he was training me"; (2) trial counsel was ineffective for failing to object and request a mistrial after the prosecutor presented evidence of his co-defendant's guilty plea as substantive evidence of petitioner's guilt; (3) trial counsel was ineffective for failing to effectively advocate for a more favorable sentencing disposition at his sentencing proceeding; and (4) appellate counsel was ineffective for failing to assert on direct appeal that the trial court erred in admitting, over defense counsel's objection, evidence of petitioner's alleged gang affiliation.

## A.  Ground One:  K.W.'s Testimony

Petitioner first argues that the trial court erred in overruling his motion for a mistrial based K.W.'s testimony at trial that petitioner stated he was "going to train [O.C.] just like he was training me."  Tr. 180.  Trial counsel objected to K.W.'s testimony as it related to any sexual contact petitioner had with K.W. as part of a separate felony case and moved for a mistrial.  The trial court denied the motion for a mistrial, but offered to instruct the jury to disregard that portion of K.W.'s testimony.  Tr. 181.  Defense counsel declined the trial court's offer, opining that repeating the statement would be even worse.  Petitioner raised this claim on direct appeal.  Resp.'s Ex. B.

In its decision, the appellate court first noted that a trial court's decision not to grant a mistrial is given "enormous discretion" on appeal.  State v. Benedict, 319 S.W. 483, 487 (Mo. Ct. App. 2010).  Also, the appellate court noted that a trial court's rulings on admissibility of evidence are reviewed for an abuse of discretion. Id.  Discretion is abused "when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." State v. Kemp, 212 S.W.3d 135, 145 (Mo. banc 2007).  Furthermore, the appellate

court noted that it is not uncommon for witnesses to unexpectedly volunteer inadmissible statements and then set forth five factors Missouri courts generally examine in analyzing the prejudicial effect of an uninvited reference to other crimes evidence.  State v. Scott, 996 S.W.2d 745, 749 (Mo. Ct. App. 1999) (including "1) whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning if the prosecutor asked the question or whether the prosecution deliberately attempted to elicit the comments; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained defense counsel's objection to the statement, and instructed the jury to disregard the volunteered statement; and 5) whether in view of the other evidence presented and the strength of the state's case, it appeared that the comment played a decisive role in the determination of guilt").

In reaching its decision, the appellate court found that:  (1) K.W.'s statement was voluntary and the objectionable part was unresponsive to the prosecutor's question on direct examination; (2) the prosecutor had not expected K.W. to offer to the objectionable statement, did not emphasize it, and the statement was singular and isolated; (3) K.W.'s statement was fairly vague and indefinite because the word "training" did not specifically refer to any sexual acts and no readily apparent inference could have been made by the jury since K.W. did not testify to witnessing any sexual acts committed against O.C. nor did she testify as to any sexual acts committed against herself; (4) the trial court offered to instruct the jury to disregard the statement, but defense counsel refused this curative measure; and

(5) the isolated comment did not play a decisive role in the determination of petitioner's guilt in light of the evidence presented in its totality, including O.C.'s own corroborating testimony that petitioner had told her he was going to "train" her.  Resp.'s Ex. E.

The appellate court's determination that the trial court did not abuse its discretion in overruling the defense attorney's request for a mistrial was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts.  Federal courts on habeas review "will reverse a state court evidentiary ruling only if the petitioner shows that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair."  Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995) (internal quotations omitted).  "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different."  Id. (internal quotations omitted).

K.W.'s testimony regarding petitioner's "training" of her was a single, unsolicited statement not referenced during the remainder of the trial.  The trial court offered to give a limiting instruction to the jury, but petitioner's trial counsel declined the offer.  Furthermore, the totality of the evidence presented at trial supported petitioner's conviction regardless of K.W.'s statement.  O.C. independently testified that petitioner told her he would "train" her "next time" and Magee testified that petitioner had instructed him to take O.C. into the bedroom and only use specific body parts.  As such, petitioner is unable to show that K.W.'s

statement fatally infected the proceedings or that there is a reasonable probability her statement affected the outcome of trial. Petitioner thus is not entitled to relief on ground one.

### B. Grounds Two, Three, and Four: Ineffective Assistance of Counsel

Petitioner's remaining claims for relief involve allegations of ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) ("Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome.") (quoting Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011)).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1410 (U.S. 2011)).

First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that

the result would have been different absent the errors. <u>Strickland</u>, 466 U.S. at 696 . . . . To satisfy <u>Strickland</u>, the likelihood of a different result must be "substantial, not just conceivable." [<u>Harrington v. Richter</u>, 131 S. Ct. 770, 792 (U.S. 2011).] Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the <u>Strickland</u> standard is unreasonable, not merely whether it is incorrect. <u>Id.</u> at 785. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> at 786.

<u>Id.</u> at 831–32.

## 1. Admission of co-defendant's guilty plea

In his second ground for relief, petitioner asserts that his trial counsel was ineffective for failing to object and request a mistrial after the prosecutor presented evidence of his co-defendant's guilty plea. During trial, the prosecutor referred to Magee's guilty plea in her opening statement and Magee testified on direct examination that he had pleaded guilty to statutory sodomy and child molestation with respect to his conduct with O.C. Resp.'s Ex. A, Tr. 113, 126. Petitioner raised this claim in his motion for post-conviction relief. Resp.'s Ex. G, Ex. J. The Missouri Court of Appeals evaluated and rejected this claim on appeal of the denial of that motion. Resp.'s Ex. L.

The appellate court concluded that the record adequately showed that petitioner had failed to establish that he was prejudiced by trial counsel's failure to object. The jury had heard testimony from both Magee and O.C. about the sexual acts committed by Magee that plainly constituted sodomy and child molestation. Given the fact that Magee admitted to having sexual contact with O.C. at trial, the appellate court was not persuaded that the additional testimony that Magee had

pleaded guilty as a result of committing those acts had any substantial impact on the jury. Ex. L at 6.

The appellate court's decision was not based on an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of Strickland. Petitioner is unable to show a reasonable probability that, but for his trial counsel's failure to object, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Independent of the references to Magee's guilty plea, Magee, O.C. and K.W. testified to facts sufficient to support petitioner's conviction. Accordingly, petitioner is not entitled to relief on ground two.

### 2. Failure to advocate for favorable sentence

In his third claim, petitioner asserts that his trial counsel was ineffective for "failing to effectively advocate for a more favorable sentencing disposition." Pet. at 8. Petitioner contends that trial counsel should have argued that the trial court consider sentencing petitioner consistent with the recommendations made in the sentencing assessment report (SAR). Pet.'s Reply at 50 [Doc. #19]. The Missouri Court of Appeals rejected this claim on appeal from the denial of petitioner's post-conviction motion. Resp.'s Ex. L. Specifically, the appellate court rejected petitioner's contention that a request for a lesser sentence by his trial counsel would have had an impact on the sentencing court. The trial court knew of the SAR recommendations, the appellate court noted, but consciously chose to reject the recommendations and impose a sentence that exceeded even the aggravating sentence recommended on the SAR.

The appellate court's decision of this claim was neither contrary to or an unreasonable application of clearly established federal law, nor was it based on an

unreasonable determination of the facts in the light of the evidence presented in the state court proceeding. As noted by the appellate court, the motion court, which was the same as the trial court, "forcefully" stated that it was "'inconceivable that any argument by trial counsel would have been persuasive to the Court since the Court's sentence exceeded the aggravating sentence of twenty years as recommended on the SAR.'" Resp.'s Ex. L at 7 (quoting the motion court). As such, petitioner is unable to show that, but for his counsel's allegedly deficient advocacy at sentencing, the outcome of the sentencing proceeding would have been different. Accordingly, petitioner is not entitled to relief on ground three.

### 3. Evidence of alleged gang affiliation on direct appeal

In his fourth ground for habeas relief, petitioner claims that appellate counsel was ineffective for failing to assert on direct appeal that the trial court erred in admitting evidence of petitioner's gang affiliation. Petitioner contends that the evidence and repeated references to gang affiliation constituted inadmissible evidence of prior uncharged wrongful acts that were irrelevant and highly prejudicial at trial. Pet.'s Reply at 56.

During O.C.'s direct examination at trial, petitioner's trial counsel objected to O.C. testifying as to petitioner's former gang affiliation. Tr. 155. The trial court overruled the objection. O.C. then testified as to petitioner's prior statements to her that he was a gang member, had stabbed people, and had been shot at by others. Tr. 156. O.C. stated that petitioner had made her swear she would not tell anyone about what happened that night. Later in the trial, petitioner's trial counsel objected to the presentation of a portion of the recording of the CAC interview with O.C. pertaining to petitioner's alleged gang affiliation. Tr. 194–95. Petitioner's trial

counsel argued that this evidence was more prejudicial than probative. The prosecutor argued that the evidence was probative, because it showed how O.C. felt threatened by petitioner and why O.C. did not report the sexual contact with Magee and petitioner to her mother. Tr. 196. The prosecutor also noted that in the defense attorney's opening statement, she had asked the jury to consider why, if the events as described had happened to O.C., she had not told her mother. Tr. 197. The trial court found that the evidence was probative under the circumstances and permitted its admission.

The Missouri Court of Appeals denied this claim on appeal from the denial of petitioner's post-conviction motion. Resp.'s Ex. L. The appellate court first explained that while evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of a defendant to commit wrongful acts, such evidence may be admissible when it is part of the surrounding circumstances relating to the charged crime so that it presents a complete and coherent picture of the events as they transpired. State v. Watson, 391 S.W.3d 18, 21 (Mo. Ct. App. 2012). Also, the appellate court explained, the prosecution is allowed to present otherwise inadmissible evidence to explain or counteract a negative inference raised by defense counsel. State v. Pierce, 932 S.W.2d 425, 431 (Mo. Ct. App. 1996). The appellate court thus determined that the trial court properly admitted the evidence as presenting a complete picture of the events that transpired and as counteracting defense counsel's attack on O.C.'s credibility in her opening statement. Resp.'s Ex. L at 9.

The appellate court's decision did not involve an unreasonable application of federal law or an unreasonable determination of facts based on the evidence

presented at trial. <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 289 (2000) (applying <u>Strickland</u> to a claim of ineffective assistance of appellate counsel). Additionally, petitioner has not shown that appellate counsel's performance fell outside the wide range of professionally reasonable assistance. <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983) ("Neither <u>Anders</u> nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."); <u>see also</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) (citing <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986) for the principle that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome"). Petitioner furthermore is unable to show a reasonable probability that trial court's evidentiary ruling affected the outcome of trial, rendering his entire trial fundamentally unfair. <u>Anderson</u>, 44 F.3d at 679. Thus, petitioner is not entitled to relief on ground four.

## V. <u>Conclusion</u>

For the reasons discussed above, the Court concludes that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has also failed to make a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. <u>See</u> <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997).

A judgment in accordance with this Memorandum will be entered separately.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of April, 2017.